JACOB WEBBER v. ROSA WEBBER.

*Fictio Juris—Divorce.*

1. By fiction of law, all judicial proceedings during a term are treated as if they took place on the first day of the term.

2. Under this rule, where the plaintiff in a suit for divorce on the ground of adultery dies pending the trial, after it has been entered upon and before the retirement of the jury, if all issues are found by the jury in favor of the plaintiff, judgment of divorce will be entered as of the first day of the term while the plaintiff was still alive.

(*Clifton* v. *Wynne*, 81 N C., 160, *Farley* v. *Lea*, 4 Dev. & Bat., 169, cited and approved.)

CIVIL ACTION for Divorce tried at Spring Term, 1880, of EDGECOMBE Superior Court, before *Gudger, J.*

This is an action for a dissolution of the bonds of matrimony upon the allegation of the defendant's adultery. The issues were drawn and submitted to the jury who find them all in favor of the plaintiff.

The motion for judgment thereon was resisted by the defendant on the ground that the plaintiff had died pending the trial after it had been entered upon and before the retirement of the jury, whereby the cause had abated, and the death was shown by affidavit.

The court declined to proceed further in the cause, refused to give judgment, and the plaintiff appealed.

*Messrs. Howard & Nash,* for plaintiff.
*Mr. W. B. Rodman,* for defendant.

SMITH, C. J. It is clear that the action does not survive, and consequently abates, unless prevented by the rule of relation whereby all judicial proceedings during a term are treated as if they took place on the first day of the term. This rule has long been recognized and enforced in deter-

mining the rights of litigants, *inter se,* when causes are tried during the term as we said in *Clifton* v. *Wynne,* 81 N. C., 160, "to avoid unseemly controversies for priority or advantage among suitors whose cases were acted on at different periods of the session." This case comes within the provisions of the rule declared in that case, for otherwise the deferring of the trial to a later period of the term would defeat the action altogether. As between the parties, the trial occurred and the verdict was rendered under the fiction on the first day of the term. This result does not arise from any statute passed to prevent an abatement, which at common law follows the death of a party, but from a rule of practice long recognized and acted on, by which the verdict and judgment if rendered would have been conclusively deemed to be during the plaintiff's life.

While the statute of 17 Chas. II, ch. 8, which enacts that in all actions personal, real or mixed, the death of either of the parties between verdict and judgment shall not be alleged for error, so as such judgment be entered within two terms after such verdict, though not in direct terms embracing the present case, has been held applicable.

In *Hetherington* v. *Reynolds,* 1 Salk., 21, the court declared that while the death before the assizes is not remedied by the statute, yet "if the party dies after the assizes begin, though the trial be after his death, that is within the remedy of the statute; for the assizes is but one day in law; and this is a remedial law and shall be construed favorably."

So in *Jacobs* v. *Miniconi,* 7 D. & E. 31, on a rule to set aside a verdict for the plaintiff rendered after the defendant's death, the court declared "that all the sittings are considered in law as only one day; that of course all the verdicts given are referred to the first day; and that the construction adopted in SALKELD had always prevailed."

Again in *Taylor* v. *Harris,* 3 B. & P., 549, the defendant died on the night of May 5th, and at the second sittings

which began May 6th, the cause was tried and the verdict passed for the plaintiff.

In setting aside the judgment LORD ALVANLEY, C. J., says: " In respect to the case of *Jacobs* v. *Miniconi,* it is to be remembered that the cause there might have been tried at any period after it had once been entered in the judge's cause proper, and nothing but the multiplicity of business prevented it from being tried on the first day of the sittings—recognizing the correctness of that ruling.

We have been able to find but a single case bearing on the point in the reports of this country, *Springstead* v. *Joyner,* decided by the supreme court of New York in 1825, 4-423. The facts are as follows:

The cause was tried in the summer of 1823 and a verdict rendered for the plaintiff. The defendant made a case for the purpose of moving for a new trial, which was noticed for argument at the present term. The plaintiff having died, a stay was asked until an administrator could be appointed and the court adopted the argument of the plaintiff's counsel as correctly expounding the law.

"This" (the stay) urged the counsel, "would be of no use to the defendant, nor did the death of the plaintiff vary the situation of the parties. Should the judgment be for the plaintiff, it would relate to and be entered up as of the term next after the verdict was rendered (altered by a statute of the state to be done at the second term.) In the eye of the law the plaintiff's death worked no change whatever in the cause. Everything, even the attorneys, remained the same and all should be treated as if Springstead was still alive until the question of the new trial should be decided."

The doctrine has been repeatedly recognized and asserted in this court that all the proceedings had during a term are referable to its first day: and while it is declared in *Clifton* v. *Wynne,* that the day when the judgment is actually rendered may be inquired into in order to determine the con-

flicting claims of outside parties to the debtor's property and their liens thereon, this decision does not disturb the rule of practice which condenses all judicial action taken during a term into a single day and that the first day as among the parties to the action and in their relations towards other suitors in the court.

The authority of the case of *Farley* v. *Lea*, 4 D. & B., 169, is not recognized as precluding an enquiry by an assignee of the property of the debtor of the day on which judgment was actually rendered, in order to determine the prior right thereto, the principle being limited in its application to parties and other suitors whose actions were tried at the same term, as forcibly stated by GASTON, J., speaking for the court, thus: That a judgment in fact rendered on a late day of the term is as operative as though it were rendered on the first day thereof seems incontestable. Where a testator died in term time before judgment was signed, it was held that it might be signed after and execution taken out against his goods in the hands of his executor, tested the first day of the term, for they relate to and are considered as a judgment and execution of the first day of the term at which day the testator was alive," and in support are cited the opinions of LORD KENYON in *Bragner* v. *Langmead*, 7 D. & E., 20; HOLT, C. J., in *Owens* v. *Woodward*, 2 Lord Ray, 849, and CHANCELOR TALBOT in *Robinson* v. *Tonge*, 3 Pere Williams, 398.

It is urged that the fiction, not hurtful under a practice which confines judicial action mainly to the sessions of the court, is productive of manifest inconvenience, when, as in prosecuting appeals under our present system, further proceedings may be had after their close, and hence the fiction should no longer obtain. To whom, it is asked, must the undertaking in the appeal be given, to whom the notice required, and how can a deceased person be represented by an attorney? These and other difficulties which readily

present themselves to the practicing lawyer are not obviated and scarcely lessened by the abrogation of the rule. Suppose the death of a party occurs on the day after the termination of the session and the trial on the last day, the very same embarrassments are met in prosecuting the appeal within the interval allowed by law, and the same perplexing enquiry must be solved. If these defects in the administration of the law are incidental to the substitution of the new for the former mode of procedure and curable only by legislation, they are not sufficient reasons for unsettling a long established rule of judicial action. But an answer to some of the objections may be furnished by the rule of relation itself which deems the entire proceeding to have been conducted and concluded on a day when the party was in life and could be represented by attorney.

It is suggested that the action for a dissolution of the marriage tie, the end and object of which are consummated by death rendering a judgment needless, does not fall under the control of a fiction adopted for other and different purposes. While the suggestion is not without force, we can find no legal ground for its exemption from the operation of a principle applicable to all other actions. What may be the consequences of the judgment upon the property of either, we are not called upon to decide. It is our duty to ascertain and expound the law, as transmitted through numerous adjudications from the earliest times, and for the legislature to correct and modify as may be found necessary.

The judgment below is erroneous and is reversed and the plaintiff is entitled to judgment upon the verdict as of the term wherein it was rendered. This will be certified.

Error.                                    Reversed.